IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


WILLIAM M. ESTEY,                                    Civil No. 05-1410-HU

       Petitioner,                            FINDINGS AND RECOMMENDATION

v.

JEAN HILL,

       Respondent.


AMY BAGGIO
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204

       Attorney for Petitioner

HARDY MYERS
Attorney General
JONATHAN W. DIEHL
Assistant Attorney General
Oregon Department of Justice
1162 Court Street, NE
Salem, OR  97301

       Attorneys for Respondent


1 - FINDINGS AND RECOMMENDATION -

HUBEL, Magistrate Judge.

Petitioner, an inmate at Snake River Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus (#39) should be denied and this proceeding dismissed.

## BACKGROUND[1]

In 1997, Petitioner's adopted daughter reported inappropriate touching by Petitioner to a school counselor. The counselor contacted local law enforcement and Detective Ludwig from the Yamhill County Sheriff's office responded. After speaking with Petitioner's daughter, Detective Ludwig had her telephone her father, accuse him of misconduct, and tell him she was going to the police. The call was recorded. Shortly thereafter Detective Ludwig, accompanied by Detective Crabtree, parked a few blocks from Petitioner's home and contacted Petitioner by cell phone to arrange for questioning. (Tr. 4-5; 15).

According to the State, the circumstances of Petitioner's questioning were as follows: when Detective Ludwig contacted Petitioner by phone he identified himself (Tr. 23) and asked Petitioner if he would meet him at the police substation in the City Hall to discuss a personal matter (Tr. 4-5); Petitioner agreed to do so (Tr. 5, 43); Petitioner arrived at the substation

---

[1]The facts are taken from the transcript of evidence received at the hearing held on Petitioner's Motion to Suppress ("Tr.) (Docket #35, 2-55) and from the briefing.

2 - FINDINGS AND RECOMMENDATION -

within 15 minutes of the telephone conversation, accompanied by his fiancée (Tr. 5); Detective Ludwig explained to Petitioner and his fiancée that he wanted to talk to Petitioner in private, that the interview shouldn't take very long, and that afterwards they could be on their way (Tr. 8); Petitioner had a part in the decision that his fiancée would not participate in the questioning (Tr. 31); Detective Ludwig interviewed Petitioner in the small substation office (Tr. 8); photographs of the substation were submitted to the court (Tr. 5, 6); Detective Ludwig and Petitioner were seated in chairs (Tr. 9); Detective Crabtree was present as a "cover officer" but was on the other side of the counter (Tr. 9); Detective Crabtree did not participate in the questioning (Tr. 10, 29); neither detective was wearing a uniform, nor were there uniformed law enforcement personnel present in the substation (Tr. 11, 28, 29); if the detectives were armed, their weapons were not displayed (Tr. 4, 28, 42-43); to the detectives' knowledge the doors to the office were not locked (Tr. 4, 28); during questioning Petitioner's fiancée opened the door to ask how things were going (Tr. 30); the questioning was not confrontational (Tr. 10, 29); Petitioner was not threatened or told he was not free to leave (Tr. 10, 11, 29, 42); Petitioner did not ask for an attorney and he gave no indication he wanted to leave (Tr. 11); no threats or promises were made (Tr. 12, 28); Petitioner was not given *Miranda* warnings prior to questioning (Tr. 13.); until the time Petitioner corroborated

3 - FINDINGS AND RECOMMENDATION -

some of what his daughter had reported to the officer, Petitioner would have been free to leave (Tr. 12); Petitioner would not have been free to leave after he corroborated some of the conduct that had been reported (Tr. 13, 20-21); Detective Ludwig did not arrest Petitioner until after questioning because he did not believe the daughter's uncorroborated statements provided probable cause to do so (Tr. 17); Petitioner was arrested at the end of questioning (Tr. 20); Detective Ludwig felt it could be problematic to protect the child since Petitioner expressed a desire to handle the matter as a family (Tr. 13); the decision to question Petitioner at the substation rather than at his home was based on the detectives' knowledge that there were possibly firearms in the home and that Petitioner had a somewhat violent history (Tr. 16); in child abuse investigations Detective Ludwig does not conduct interviews of the victim or of the suspect by telephone (Tr. 16).

Detective Ludwig distinguished an interview from an interrogation by the tone used. (Tr. 24-25.) When Petitioner was denying the allegations, Detective Ludwig characterized the interaction as semi-confrontational in that he was presenting information provided by Petitioner's daughter and asking Petitioner about the inconsistencies with what Petitioner was saying. (Tr. 25.) There was no yelling or change in tone (Tr. 25, 26), and after Petitioner had corroborated some of the allegations there was no longer any confrontational aspect to the questioning. (Tr. 25-

4 - FINDINGS AND RECOMMENDATION -

26.) In the suppression hearing Detective Ludwig stated: "[a]t parts, I am sure it could be considered an interrogation." (Tr. 25.) "[T]he nature of the questions would indicate that is probably an interrogation rather than an interview." (Tr. 26.)

Petitioner testified the detective stated he wanted to speak to him regarding his daughter, that he drove himself to the police substation, and that no threats or promises were made by the detectives. (Tr. 40-43.) He further testified he felt he had no choice, but to report to the police substation and answer questions given the telephone call from Detective Ludwig. (*Id.*) Petitioner's fiancée testified the detectives made the decision she could not be present during questioning (Tr. 36).

Petitioner filed a Motion to Suppress the statements made during questioning. The motion was denied. Petitioner was convicted by a non-unanimous jury (10-2) on twenty-counts of Sexual Abuse in the First Degree, and sentenced to a total of 225 months imprisonment. Petitioner appealed alleging trial court error in the denial of his Motion to Suppress and arguing his Fifth and Fourteenth Amendment rights against self-incrimination were violated when he did not receive *Miranda* warnings prior to questioning. The Oregon Court of Appeals affirmed without opinion. (Respt.'s Exh. 110.) The Oregon Supreme Court denied review. (Respt.'s Exh. 109.)

Petitioner filed for post-conviction relief (PCR), but relief

5 - FINDINGS AND RECOMMENDATION -

was denied on all of his claims. (Respt.'s Exh. 126.) The Oregon Court of Appeals summarily affirmed the PCR trial court's decision, and the Oregon Supreme Court denied review. (Respt.'s Exhs. 130, 132.) Petitioner filed the instant petition on September 21, 2005, (docket #17) alleging violation of his Fifth and Fourteenth Amendment rights against self-incrimination when he did not received *Miranda* warnings prior to questioning.

## DISCUSSION

### I. Standards of Review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he demonstrates that the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In construing this provision, the Supreme Court stated: "it seems clear that Congress intended federal judges to attend with the utmost care to state court decisions, including all of the reasons supporting their decisions, before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant

6 - FINDINGS AND RECOMMENDATION -

the issuance of the writ." *Williams v. Taylor*, 529 U.S. 362, 386 (2000). "We all agree that state court judgments must be upheld unless, after the closest examination of the state court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Id.* at 389. The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002). For this proceeding it is the trial court's decision on Petitioner's Motion to Suppress that is the basis for review.

(1) <u>Contrary to, or unreasonable application of clearly established Federal law</u>

A state court decision is "contrary to" clearly established federal law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent. *Williams*, 529 U.S. at 388. An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Williams*, 529 U.S. at 413), *cert. denied*, 126 S. Ct. 484 (2005). "'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. *Miranda v. Arizona*,

7 - FINDINGS AND RECOMMENDATION -

384 U.S. 436 (1966) and its progeny govern the issue presented here.

(2) <u>Unreasonable determination of the facts</u>

In reviewing state court decisions, "[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F. 3d 992, 999 (9th Cir. 2004). This is a standard that will be met in few cases. *Id.* at 1000. An unreasonable determination of the facts occurs when the fact-finding process is flawed. Examples of a flawed process include: making evidentiary findings without holding a hearing, misstating the record, ignoring the record, misapprehending the evidence presented. *Id.* at 1001.

If a federal court, upon review of the evidence on which the state court based its determination, does not find the determination unreasonable, the state court findings are presumed to be correct. A petitioner must then rebut the presumption of correctness with clear and convincing evidence that the state court findings of fact are in error. *Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003), *Lambert*, 393 F.3d at 972 (citing *Taylor*, 366 F.3d at 999), *cert. denied*, 126 S. Ct. 484 (2005).

## II. The Merits

Petitioner alleges investigating officers "violated his Fifth and Fourteenth Amendment rights against self-incrimination when

8 - FINDINGS AND RECOMMENDATION -

they interrogated him in a custodial setting without first providing him with notice of his rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966)." (Amended Petition, 3.) The state trial court found Petitioner was not in custody at the time he was questioned by investigating officers and denied Petitioner's Motion to Suppress. Petitioner argues the "trial court unreasonably concluded [he] was not in custody and no compelling circumstances existed to require the advice of rights under *Miranda*" and ignored probative evidence. *Id.* The question for the court is whether the state trial court's custody determination was contrary to, or involved an unreasonable application of *Miranda*, or was based on an unreasonable determination of the facts.

1. *Miranda* and its progeny

*Miranda* established that suspects must be warned of their rights against self incrimination prior to custodial interrogations. *Miranda*, 384 U.S. at 478-79. Two distinct inquiries must be conducted to determine if circumstances justify *Miranda* warnings. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The first inquiry is factual: what were the circumstances surrounding the interrogation? *Id.* The second inquiry is a mixed question of fact and law: given the circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave? *Id.* Then, a determination is made as to whether there was "a formal arrest or restraint on

9 - FINDINGS AND RECOMMENDATION -

freedom of movement of the degree associated with a formal arrest". *Id.*; *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002). The "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994).

"The custody test is general" and "the more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 662-64 (2004). In the Ninth Circuit, factors relevant to the custody determination include: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001). The determination must, however, be based on the totality of the circumstances. *Id.* Factors found to have weighed against finding that a custodial interrogation occurred include law enforcement: not transporting the individual to the site for questioning or requiring that the individual appear at a specified time; stating that questioning would not take long; not threatening the individual or suggesting they would be placed under arrest; having the persons accompanying an individual to the police station remain in the lobby during the

10 - FINDINGS AND RECOMMENDATION -

questioning; releasing an individual after questioning. *Yarborough*, 541 U.S. at 664-65. Factors found to have weighed in favor of finding a custodial investigation occurred include: law enforcement personnel not telling an individual they were free to leave; persons accompanying a juvenile suspect not being allowed to be present during questioning. *Id.*

2. <u>The state-court findings of fact</u>

At Petitioner's Motion to Suppress hearing, the trial court heard testimony regarding the circumstances of Petitioner's interview from the detectives who conducted the interview, from Petitioner, and from Petitioner's fiancée. In closing, defense counsel argued Petitioner should have received *Miranda* warnings, at the latest, once Petitioner corroborated some of his daughter's allegations because, at that point, Petitioner was no longer free to leave. The State responded that Petitioner was not in custody.

The trial court judge made the following findings of fact subsequent to the Motion to Suppress hearing:

- The defendant was at home when he received a call from Detective Ludwig requesting that [he] come to the police substation at the Willamina City Hall . . . about a personal matter. [Defendant] agreed to do so.

- [Defendant] drove with his fiancée to the substation and talked with officer Ludwig about his daughter's allegations of sex abuse and sodomy.

- Detective Jack Crabtree acted as cover officer and did not participate in the interview.

- [Defendant] participated in the interview freely and voluntarily.

11 - FINDINGS AND RECOMMENDATION -

- There were no threats nor promises made by the officers.

(Respt.'s Exh. 119.)  Although included as a finding, the court concluded:

- During the questioning [defendant] was not in custody nor in "compelling" circumstances justifying *Miranda* warnings.

*Id.*

The state court findings are limited, but, "state courts are not required to address every jot and tittle of proof suggested to them, nor need they make detailed findings addressing all the evidence before them." *Taylor*, 366 F.3d at 1001 (internal quotations omitted).  Review of state court findings is highly deferential.  *Id.* at 999-1000.  Based on the record, I do not find the trial court's findings of fact to be unreasonable.

The detectives involved in questioning Petitioner testified they did not threaten Petitioner with arrest, they did not transport him to the substation, they did not make promises, and Petitioner gave no indication during questioning that he wished to leave.  Petitioner testified he went to the police substation on his own shortly after receiving the call from Detective Ludwig, he knew the detective wanted to talk to him about his daughter, and he confirmed the detectives did not at any time threatened him or make promises. Testimony during the suppression hearing also revealed that, although questioning occurred in a police substation, the substation was located in the City Hall, there were no uniformed

officers present, the detectives were not in uniform and they did not display their weapons, the detectives did not yell or raise their voices during questioning, Petitioner was interviewed by one detective with the other detective not participating and on the other side of a counter, the substation door was not locked during questioning, and Petitioner's fiancée opened the door to inquire how things were going while Petitioner was being questioned.

Petitioner contends the trial court ignored evidence indicative of his being in custody, but points to no evidence that, in the context of the full record, is of such probative value as to render the trial court's findings unreasonable. *See Taylor*, 366 F. 3d at 1006-07. Furthermore, although Petitioner testified he felt he had no choice but to report to the police substation given the telephone calls from his daughter and from Detective Ludwig, Petitioner's subjective views would not be a factor in the custody determination. *Stansbury*, 511 U.S. at 323. Accordingly, the state court findings are presumed to be correct.

Petitioner contends the trial court unreasonably concluded he was not in custody during questioning. However, the trial court conducted the appropriate inquiry as to the circumstances of Petitioner's interview. The trial court made findings regarding the nature of the interview, including that Petitioner participated in the interview freely and voluntarily, and concluded Petitioner was not in custody at the time the interview took place.

13 - FINDINGS AND RECOMMENDATION -

Petitioner has not shown that the trial court's custody determination was contrary to or an unreasonable application of established Supreme Court precedent, or based on an unreasonable determination of the facts. Habeas relief is, therefore, precluded.

## CONCLUSION

For the reasons stated above, the Amended Petition for Writ of Habeas Corpus (#39) should be denied and this action dismissed.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due March 10, 2008. If no objections are filed, the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due March 24, 2008, and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 22ND day of February, 2008.

_____
Dennis J. Hubel
United States Magistrate Judge

14 - FINDINGS AND RECOMMENDATION -